IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| **BENEDETTINI CABINETS, L.P.** <br> 533 Highway 36 North <br> Rosenberg, Texas 77471, <br><br> Plaintiff, <br><br> v. <br><br> **THE SHERWIN-WILLIAMS COMPANY**, <br> Attn: V.P. – Sales – Industrial Wood <br> 101 West Prospect Avenue <br> Cleveland, Ohio 44115, <br><br> and <br><br> **THE SHERWIN-WILLIAMS COMPANY**, <br> c/o Its Statutory Agent, Corporation Service Company <br> 50 West Broad Street, Suite 1330 <br> Columbus, Ohio 43215, <br><br> Defendant. | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) | CASE NO. <br><br> JUDGE: <br><br><br><br> **COMPLAINT** <br><br> **(Jury Demand Endorsed Hereon)** |

**PLAINTIFF'S ORIGINAL COMPLAINT**

COMES NOW, Benedettini Cabinets, L.P. ("Benedettini"), by its undersigned attorneys, and files this Complaint and states the following:

**I. Parties, Jurisdiction, and Venue**

1. Plaintiff, Benedettini Cabinets, L.P., is a limited partnership organized under the laws of the State of Texas.

2. Defendant, Sherwin-Williams Company, is a corporation organized under the laws of the State of Ohio, with its principal place of business in the State of Ohio.

3. This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332(a)(1). The amount in controversy exceeds $75,000 and complete diversity exists between the parties. Benedettini is a limited partnership organized under the laws of the State of Texas, and all its general and limited partners are Texas citizens. Accordingly, Benedettini is a Texas citizen. Sherwin-Williams is a citizen of Ohio because it was incorporated in Ohio and has its principal place of business there.

4. Venue is proper in this district under 28 U.S.C. § 1391(b)(1) because Sherwin-Williams resides in Cleveland, Ohio.

## II. Facts

5. Benedettini is a cabinet maker with "a focus on high-quality design and craftsmanship."[1] "[T]he company understands and emphasizes that cabinets are more than just fixtures to hold up your countertops."[2] Its primary business is in the Gulf South, mainly in Texas. Benedettini and Sherwin-Williams Company ("Sherwin-Williams") have a twenty plus (20+) year relationship regarding ultraviolet coating ("UV Coating"). UV Coating is a clear compound that is applied wet and then dried with ultraviolet light. This curing is a fast process that provides longer protection for the stained wood of cabinets. It is an important aspect to finishing cabinets.

6. In the early 2000s, Sherwin-Williams sold Benedettini equipment for its UV Coating process. For the next ten (10) years Sherwin-Williams attempted to gain Benedettini's exclusive business in UV Coating. However, Sherwin-Williams UV coating was always found

---

[1] See Sherwin-Williams website: Benedettini Cabinetry Case Study by Sherwin-Williams https://industrial.sherwin-williams.com/na/us/en/industrial-wood/media-center/case-studies/benedettini-cabinetry.html
[2] *Id.*

2

wanting – it would not adhere correctly, the coating would crack, or the coating would simply not look right. All these issues were discovered at or shortly after manufacture.

7. By 2016, the UV Coating was the one of the most expensive finishing supplies that Benedettini purchased from manufacturers such as Azko Noble and later Valspar. UV Coating was the key to obtaining Benedettini's business in finishing supplies. Benedettini spent over a million dollars a year on such products. Sherwin-Williams wanted this business.

8. Valspar UV coating was the gold standard for Benedettini as it provided a great finish, was easy to apply, and had no end user issues. Over time the Valspar UV coating did not cause end user repairs and lasted for years. In other words, Benedettini did not have any significant durability UV issue with its Valspar UV coated cabinets.

9. In 2015, Sherwin-Williams' sales to Benedettini dropped to its lowest level ever to $537.58. In 2016, Sherwin-Williams had no business with Benedettini. By the end of 2018, Sherwin-Williams received $1,323,660.68 in sales to Benedettini. This case is about how Sherwin-Williams deceived Benedettini with its claimed capabilities and obtained Benedettini's business – a deception that could cost Benedettini millions at the expense of Sherwin-Williams's false promises. It all began with a merger.

10. In 2016, news broke that Sherwin-Williams was going to acquire Valspar. Matt Bible ("Mr. Bible"), General Manager for Benedettini, reached out to Tim Jones ("Mr. Jones"), a senior sales manager with Sherwin-Williams. Mr. Bible wanted to ensure that he could obtain the same Valspar UV Coating that was integral to Benedettini's operations. Mr. Bible repeatedly explained to Sherwin-Williams that Valspar UV provided a great finish, was easy to apply, and had no end user issues months and years after application. Mr. Bible made it clear, also at all times, that if Sherwin-Williams could provide the same Valspar UV coating performance that Bendettini

3

had become accustomed to then Sherwin-Williams would obtain 100% of Benedettini's business in finishing products. Subsequent to this communication, Mr. Jones began to make a series of promises that Sherwin-Williams would supply a comparable UV coating.

11. In 2017, Sherwin-Williams finished the acquisition of Valspar. However, the Valspar division that made the UV coating being used by Benedettini was spun off to another company. This gave Sherwin-Williams an opportunity.

12. By 2017, Benedettini had over fifteen (15) years of UV coating experience. The issues that other UV coating products presented were those that were obvious at or shortly after application. Benedettini never had issues post completion or issues that arose years later. It was important to Benedettini that any UV coating it used did not have such post completion issues. In other words, that the UV coating was durable. The Valspar UV coating excelled in minimal manufacturing issues and improved coverage compared to other UV coatings. This history and Benedettini's requirements were well known to Sherwin-Williams as communicated in many conversations between Benedettini and Sherwin-Williams.

13. At all times, Mr. Bible, Kevin Roach ("Mr. Roach"), Benedettini's plant manager, and Steve Benedettini ("Mr. Bendettini"), the owner of Benedettini, made it clear that the key to Sherwin-Williams obtaining Benedettini's exclusive business was that the Sherwin-Williams UV coating would perform the same as Valspar, provide excellent coverage, and provide issue-free usage and protection for years.

14. From May 2017 through November 2017, Mr. Jones, along with other Sherwin-Williams employees (including Rick Romero, Steve Nicks, Mark Portwood, and Alex Blahnik) represented to Mr. Bible, Mr. Benedettini, and other Benedettini employees that Sherwin-Williams could replicate the Valspar UV coating or at least provide the exact same performance, including

4

that the UV coating would remain issue-free for years after application. It was represented that like the Valspar UV coating, the Sherwin-Williams coating and "partnership" with Benedettini would provide long- lasting protection for the stained wood of cabinets.

15. In early June 2017, multiple Sherwin-Williams employees descended on Benedettini's factory in Rosenberg, Texas. This included salespeople, a service technician, and other Sherwin-Williams support staff. The Sherwin-Williams team took over the UV coating equipment at the factory. The Sherwin-Williams team ran numerous products, chemically tweaked formulas, and became intimately involved in Benedettini's processes. After much work, Sherwin-Williams claimed to have replicated the performance aspects of the Valspar UV coating. Benedettini's ownership and managers reiterated, again and again, that if Sherwin-Williams could do so they would gain Benedettini's lucrative business.

16. Sherwin-Williams made many representations of a "partnership" with Benedettini whereby Sherwin-Williams would provide excellent products and alleviate any issues that arose as a part of this "partnership." For example, on September 12, 2017 Mr. Jones, stated Sherwin-Williams was a "partner" to Benedettini with "improvement goals" to take Benedettini "to the next level and beyond." Sherwin-Williams promised a "full support system" and "new production opportunities" for Benedettini, recognizing that "few businesses run the volume and offer the diverse product lineup Benedettini Cabinetry does."[3]

17. After this initial short test, Sherwin-Williams and Benedettini agreed to a longer more rigorous test which was delayed due to the devastation of Hurricane Harvey but finally took place in October 2017. For a week a Sherwin-Williams team of laboratory technicians, salespeople, and service representatives took over the Benedettini UV Coating line and coated

---

[3] *Id.*

hundreds of cabinets. Formulas were tweaked and the results appeared to be impressive. The result of either the June and/or October testing was that Sherwin-Williams selected the Ultra-Cure Low VOC SB UV TC 257 UV Topcoat Clear 25 Sheen, V86FH0257 coating ("257 UV").

18.     Sherwin-Williams also represented to Benedettini that the Sherwin-Williams 257 UV was chemically "tweaked" to meet Benedettini's performance requirements. Sherwin-Williams is one of the largest, most respected manufacturers of paints and coatings. Benedettini relied on Sherwin-Williams's testing and representations that the Sherwin-Williams 257 UV coating was the equivalent of the Valspar product and would be suitable for use by Benedettini. Benedettini also relied on the representations of Sherwin-Williams that the Sherwin-Williams 257 UV would be durable, was appropriate for usage in the Gulf South region, was appropriate for Benedettini stained products, and that Sherwin-Williams modified the product for Benedettini's use. Benedettini's reliance on such representations was justified as they came from numerous agents of Sherwin-Williams, including but not limited to the sales staff, people represented to be working in Sherwin-Williams's laboratory, as well as the officers of Sherwin-Williams.

19.     In fact, a division President of Sherwin-Williams, Dennis Karnstein ("Mr. Karnstein"), personally visited Benedettini in Texas on, or about, October 10, 2017, and made the same promises and assurances regarding the performance characteristics of Sherwin-Williams UV products.

20.     As a result of Sherwin-Williams's representations outlined above, including but not limited to those representations made in person in early June 2017 and October 2017 at Benedettini's plant in Texas, Sherwin-Williams was awarded Benedettini's business – a business that has amounted to over $5 million since 2017. Under this arrangement the Sherwin-Williams UV coating was used in thousands of cabinets in over two thousand homes in the Gulf South.

6

Sherwin-Williams was so pleased with this switch that Sherwin-Williams touted the business with Benedettini on its website.[4]

21. Then in May 2020 it all came crashing down.

22. In May 2020, a post appeared on Facebook that Benedettini cabinets would "frost." Frost on a cabinet is a white, hazy deposit on the surface. Because Benedettini's reputation has been vital to its success over the years, Benedettini immediately began to investigate. It was eventually discovered that stained cabinets that used the Sherwin-Williams 257 UV coating, when exposed to humidity, developed a white haze in the finish—a problem that Benedettini never experienced with the Valspar UV or any other UV coating. In fact, Benedettini never experienced any "frosting" with its cabinets. This "frosting" ruins the finish on the cabinets.

23. When Sherwin-Williams formulated the Sherwin-Williams 257 UV for Benedettini (and then recommended its use), Sherwin-Williams was well-aware that Benedettini would be using the product in the Gulf South, which is known to be humid. Sherwin-Williams had direct, first-hand knowledge that Benedettini would be using the coating in a humid climate through (i) sixteen (16) years of account knowledge with Benedettini; (ii) participating in the testing of the product in Texas; and (iii) the fact that several key Sherwin-Williams employees, including Mr. Jones who was instrumental in having Sherwin-Williams develop the 257 UV coating, reside in Texas.

24. While investigating the issue, Benedettini reached out to Sherwin-Williams. Sherwin-Williams performed scientific work on hazed cabinets in its laboratories. Sherwin-Williams also visited the jobsites where the failures occurred. While Sherwin-Williams has not shared its findings in any appreciable way, Sherwin-Williams at first attempted to blame a

---

[4] *Id.*

chemical neighbor of Benedettini for the issue claiming the cause was an airborne "surfactant." A "surfactant" is a surface-active agent chemical used to reduce surface tension of a liquid. Surface-active agents are commonly used in stains and UV coating.

25. However, in March 2021, after discussions with the neighbor, Sherwin-Williams representative Kevin LaFavers ("Mr. LaFavers") called Mr. Bible. Mr. LaFavers said to "back off" the neighbor. Sherwin-Williams replicated the frosting failure in its lab without Benedettini equipment or materials. The product was "re-wetting" and causing a residue on the surface. Mr. LaFavers concluded that the problem was on the Sherwin-Williams side.

26. During the investigation, it was also discovered that the Sherwin-Williams 257 UV was prematurely "yellowing" on lighter stains. This "yellowing" also required Benedettini to repair and/or replace cabinets with the "yellowing" caused by the Sherwin-Williams 257 UV.

27. Also, during this time, Mr. Roach had conversations during the investigation into the cause with Mr. LaFavers. Mr. LaFavers represented that the Sherwin-Williams 257 UV was used by many other customers without any issue.

28. As a result of Sherwin-Williams internal testing, in March 2021 Sherwin-Williams switched Benedettini off Sherwin-Williams 257 UV and selected Sherwin-Williams 292 UV. Sherwin-Williams promised and explained that Sherwin-Williams 292 UV was internally tested, and it would not "re-wet" and cause the frosting issue.

29. However, while testing the Sherwin-Williams 292 UV it was discovered that Sherwin-Williams 292 UV would "cloud" on top of darker stains. This "clouding" is not a frosting but a clarity issue. Thus, starting in June 2021, Sherwin-Williams then sold Benedettini Sherwin-Williams 297 UV for darker stains.

30. It was around the time Sherwin-Williams directed the use of Sherwin-Williams 292 UV in March 2021 that Mark Portwood ("Mr. Portwood") with Sherwin-Williams told Mr. Bible that the Sherwin-Williams scientists claimed that the Sherwin-Williams 257 UV "was not intended to be used on light stain colors" – something that Benedettini had done at Sherwin-Williams's direction for at least four (4) years. This was a far cry from the claims that the Sherwin-Williams 257 UV would have the performance characteristics of the Valspar UV and that many customers used the 257 UV without issue.

31. Throughout 2020 through today, many customers complained of major frosting issues. After attempting various fixes, including those suggested by Sherwin-Williams, it was determined that the only remedy is to remove and completely refinish the cabinets on site at a significant cost. The cost of refinishing a set of cabinets varies depending on several variables such as the location, number of cabinets, types of cabinets, etc., but typically exceeds $15,000.00 per household. To date, Benedettini is aware of nearly sixty (60) homes with the defective Sherwin-Williams 257 UV coating. Benedettini anticipates that as many as two thousand homes (2000) are infected with cabinets containing the defective Sherwin-Williams 257 UV coating.

32. Sherwin-Williams's misrepresentations and product failures have already cost Benedettini nearly a million dollars, and, given the number of cabinets infected with the defective Sherwin-Williams 257 UV coating, will likely cost Benedettini tens of millions of dollars.

**Cause of Action No. 1 - Fraud/Fraudulent Inducement**

33. Benedettini repeats and re-asserts the allegations of the preceding paragraphs of this Complaint as if fully set forth herein.

34. Sherwin-Williams made representations regarding its 257 UV coating that were material to the transaction at issue and fraudulent. As noted above in the Facts section, from May

9

2017 through November 2017, Tim Jones, along with other Sherwin-Williams employees (including Dennis Karnstein, Rick Romero, Steve Nicks, Mark Portwood, and Alex Blahnik) made representations to Mr. Bible, Mr. Benedettini, and other Benedettini employees. Many of these representations were in early June and in October 2017 on the phone and in person at the Benedettini factory. These representations include:

 a. Sherwin-Williams represented that it could provide the Valspar UV coating or at least provide the exact same performance and durability, including that the UV coating would remain issue-free and durable for years after application.

 b. Sherwin-Williams represented that the Sherwin-Williams 257 UV coating would be suitable for use in the Gulf South market in which Benedettini sold its cabinets.

 c. Sherwin-Williams represented that the Sherwin-Williams 257 UV coating should be used for light finishes.

 d. Sherwin-Williams also represented that the Sherwin-Williams 257 UV coating was used without issue by many other customers.

35. Sherwin-Williams's representations about its 257 UV coating were false in the following ways:

 a. The coating was not the same performance as the Valspar UV coating and was not issue-free for years after application. The coating did not have the properties or functionality described. When the Sherwin-Williams 257 UV coating is exposed to humidity, deposits form and the cabinets develop a white haze or "frosted" finish.

 b. The Sherwin-Williams 257 UV coating was not a suitable product for use in humid climates such as Texas.

    c. It was later discovered that Sherwin-Williams does not recommend the Sherwin-Williams 257 UV for light finishes.

    d. At least one other Sherwin-Williams customer utilizing Sherwin-Williams 257 UV coating experienced "frosting."

36. Sherwin-Williams made these statements regarding its 257 UV coating with knowledge that they were false or with utter disregard or recklessness regarding whether the statements were false.

37. Sherwin-Williams made these statements with the intent to mislead Benedettini into relying on these statements. Sherwin-Williams did so to gain millions of dollars in revenue as they were aware that the UV Coating was the key to becoming the exclusive supplier to Benedettini for finishing supplies.

38. Given Sherwin-Williams's standing in the market, coupled with the efforts Sherwin-Williams purportedly undertook to formulate the Sherwin-Williams 257 UV coating, Benedettini's reliance on Sherwin Williams's representations regarding the Sherwin-Williams 257 UV coating was justifiable.

39. Benedettini has been injured as a result of Sherwin Williams's false statements.

**Cause of Action No. 2 – Negligent Misrepresentation**

40. Benedettini repeats and re-asserts the allegations of the preceding paragraphs of this Complaint as if fully set forth herein.

41. One who, in the course of his business profession or employment, or in any other transaction in which he has a pecuniary interest, supplies false information for the guidance of others in their business transaction, is subject to liability for pecuniary loss caused to them by their

justifiable reliance upon the information, if he fails to exercise reasonable care or competence in obtaining or communication the information.

42. In the course of Sherwin-Williams's business, and in a transaction in which it had a pecuniary interest, Sherwin-Williams supplied false information for the guidance of Benedettini. These representations included:

   a. Sherwin-Williams could provide the Valspar UV coating or at least provide the exact same performance, including that the UV coating would remain issue free for years after application.

   b. Sherwin-Williams represented that the Sherwin-Williams 257 UV coating would be suitable for use in the markets in which Benedettini sold its cabinets.

   c. Sherwin-Williams represented that the Sherwin-Williams 257 UV coating should be used for light finishes.

   d. Sherwin-Williams also represented that the Sherwin-Williams 257 UV coating was used without issue by many other customers.

43. Sherwin-Williams failed to exercise reasonable care in the following ways:

   a. The coating did not have the same performance characteristics as the Valspar UV coating and was not issue-free for years after application. The coating did not have the properties or functionality described. When the Sherwin-Williams 257 UV coating is exposed to humidity, crystals form and the cabinets develop a white haze or "frosted" finish.

   b. The Sherwin-Williams 257 UV coating was not a suitable product for use in humid climates such as Texas.

  c. It was later discovered that Sherwin-Williams does not recommend the Sherwin-Williams 257 UV for light finishes.

  d. At least one other Sherwin-Williams customer utilizing Sherwin-Williams 257 UV coating experienced "frosting."

44. Given Sherwin-Williams's standing in the market, and efforts Sherwin-Williams purportedly undertook to formulate the Sherwin-Williams 257 UV coating, Benedettini's reliance on Sherwin Williams's representations that the Sherwin-Williams 257 UV coating was suitable for use and would have the same functionality as the prior Valspar product was justifiable.

45. Benedettini has been injured as a result of Sherwin-Williams's false statements.

## Cause of Action No. 3 – Breach of Express Warranty

46. Benedettini repeats and re-asserts the allegations of the preceding paragraphs of this Complaint as if fully set forth herein.

47. Express warranties are created by either the seller's affirmation of fact or promise to the buyer relating to the goods purchased and those warranties become part of the bargain.

48. Sherwin-Williams expressly and specifically represented that its Sherwin-Williams 257 UV coating would have the same properties, characteristics, and functionality as the Valspar product. Indeed, Sherwin-Williams formulated its product to be a performance duplicate of the Valspar UV coating. Sherwin-Williams's representations that its product would have the same properties and functionality as the Valspar UV coating constitutes an express promise that was a material part of the bargain.

49. Sherwin-Williams also expressly and specifically represented that the Sherwin-Williams 257 UV coating would be suitable for use in the markets in which Benedettini sold its cabinets.

50. Sherwin-Williams also expressly and specifically represented that the Sherwin-Williams 257 UV coating should be used for light finishes.

51. These specific, factual representations regarding Sherwin Williams's product formed a basis for the transaction between Sherwin-Williams and Benedettini and, as such, became part of the bargain. Sherwin-Williams failed to provide a product in conformity with these representations.

52. Sherwin-Williams has breached various express warranties, and Benedettini has been damaged as a result.

## Cause of Action No. 4 – Breach of Implied Warranties

53. Benedettini repeats and re-asserts the allegations of the preceding paragraphs of this Complaint as if fully set forth herein.

54. The law imposes an obligation on the seller of goods, like Sherwin-Williams, to ensure that goods sold conform to the normal commercial standards. In addition, in a case like this, where Sherwin-Williams has reason to know of the particular use of its product, the common law imposes an obligation that the product is in fact fit for the particular use.

55. The Sherwin-Williams 257 UV coating was formulated for Benedettini with Sherwin-Williams's full knowledge that the product would be used in Texas. However, the 257 UV coating develops a white haze in the finish when exposed to humidity. In other words, the 257 UV coating failed to conform to the normal commercial standards and, in addition, is not fit for its intended use as a UV coating in the Texas market.

56. Benedettini has been damaged by Sherwin-Williams's breach of the implied warranties of merchantability and fitness for particular purpose.

**Prayer for Relief**

WHEREFORE PREMISES CONSIDERED, Plaintiff, Benedettini Cabinets, L.P., prays that Defendant, Sherwin-Williams Company, be cited to appear and file an answer herein, and on final hearing hereof:

(a) Plaintiff have and recover from Defendant actual damages in excess of $75,000 to be determined at trial together with pre and post-judgment interest as allowed by law;

(b) Plaintiff recover its reasonable attorneys' fees and all costs of Court;

(c) Plaintiff recover such other and further relief to which it may show itself to be justly entitled.

Respectfully submitted,

| | |
|---|---|
| */s/ Brian A. Cook* | */s/ (pro hac vice pending)* |
| Brian A. Cook (0058761) | James A. Collura, Jr. (Texas Bar No. 24044502) |
| WALDHEGER • COYNE | Justin T. Scott (Texas Bar No. 24070578) |
| *A Legal Professional Association* | BRADLEY ARANT BOULT CUMMINGS LLP |
| 1991 Crocker Road, Suite 550 | 600 Travis, Suite 4800 |
| Westlake, Ohio 44145 | Houston, Texas 77002 |
| Telephone: (440) 835-0600 | Telephone: 713-576-0300 |
| Fax: (440) 835-1511 | Fax: 713-576-0301 |
| Email: bacook@healthlaw.com | Email: jcollura@bradley.com |
| | jscott@bradley.com |

## JURY DEMAND

Plaintiff hereby demands a trial by jury on all issues so triable.

                                              */s/ Brian A. Cook*
                                              Brian A. Cook (0058761)
                                              WALDHEGER • COYNE